UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| THOMAS DUPREE, ALARIC COLEMAN AND JOSEPH SMITH | CIVIL ACTION NO. 15-0354 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CITY OF MONROE, QUINTEN D. HOLMES, SR., AND JAMES E. MAYO | MAGISTRATE JUDGE HAYES |

## RULING

Plaintiffs Thomas Dupree ("Dupree"), Alaric Coleman ("Coleman"), and Joseph Smith ("Smith") are police officers employed by Defendant the City of Monroe ("the City").  They bring this lawsuit under 42 U.S.C. § 1983 against the City; Police Chief Quinten D. Holmes, Sr. ("Holmes"), in his individual and official capacities; and Mayor Jamie Mayo ("Mayo") in his official capacity,[1] contending that Defendants' sick leave policy for police officers violates their federal constitutional rights because it prohibits the exercise of their right to travel, freedom of association, and right to privacy; violates their right to be free from unreasonable search and seizure; constitutes punishment without due process of law; and deprives them of equal protection under the law.

Plaintiffs also invoked the supplemental jurisdiction of the Court over state law claims that Defendants have violated Article VI, § 5 of the Louisiana Constitution because the sick leave policy conflicts with the state general law (1) under LA. REV. STAT. § 33:2214 by burdening the exercise of Plaintiffs' right to 52 weeks of paid sick leave, so as to make the leave a punishment; (2) under

---

[1]Plaintiffs' claims against Chief Holmes and Mayor Mayo in their official capacities are claims against the City and thus redundant.  Nevertheless, the Court has considered all claims against Defendants.

LA. REV. STAT. §23:1221 by denying Plaintiffs the opportunity to obtain restricted employment and collect supplemental earnings benefits; (3) under LA. REV. STAT. § 23:1226 by denying the benefit of vocational rehabilitation; (4) by failing to allow visits to or efforts to secure an attorney for representation; (5) by failing to provide for appearances at mediation and hearings in workers' compensation litigation; (6) by interfering with the jurisdiction of the workers' compensation judge under LA. REV. STAT. 23:1310.3(E); (7) by burdening police workers' compensation claimants with requirements not authorized or required by the workers' compensation law and, specifically, with LA. REV. STAT. §§ 23:1034 & 23:1034.1; and (8) by requiring workers' compensation claimants to comply with an onerous set of requirements that are not required of other workers' compensation claimants.

Plaintiffs seek declaratory and injunctive relief and compensatory and punitive damages.

Defendants contend that there is a rational basis for the sick leave policy, that Plaintiffs' constitutional rights have not been violated, that Plaintiffs' demand for wages implicates and is foreclosed by the Fair Labor Standards Act, that the sick leave policy does not violate state law, and that Holmes is entitled to qualified immunity.

Defendants have filed a Motion for Summary Judgment [Doc. No. 9] on all of Plaintiffs' claims.  Plaintiffs filed a Motion for Partial Summary Judgment [Doc. No. 11] on the issue of liability, moving the Court to find that the sick leave policy is unconstitutional on its face and as applied.  Plaintiffs further move the Court for judgment as a matter of law on its request for a permanent injunction.  The two motions have been fully briefed.

For the following reasons, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiffs' Motion for Partial Summary Judgment is DENIED.  Plaintiffs' claims are DISMISSED

2

WITH PREJUDICE.

## I.     FACTS AND PROCEDURAL HISTORY

In Louisiana, police officers subject to civil service laws are guaranteed 52 weeks of sick leave at full pay, regardless of whether they developed an injury or illness while on or off the job. *See* LA. REV. STAT. 33:2214(B).  If the officer is injured while on the job, his or her pay by the City is off-set by the 2/3 pay received as workers' compensation benefits.   *See* LA. REV. STAT. 33:2214(B).    On November 15, 2013, the Monroe Police Department ("MPD") adopted and made effective General Order 22.2.1, which combined the different leave programs that police officers previously used.  The "Sick Leave and Worker's Compensation" section of General Order 22.2.1 provides the sick leave policy ("the Policy") which Plaintiffs challenge. [Doc. No. 9, Exh. 6, General Order 22.2.1(C)].  The stated "purpose" of the Policy "is to set forth guidelines concerning employee conduct while on paid leave, injured on duty leave or disability leave." *Id.* at p. 00719.[2]  The Policy then details guidelines over several pages in the General Order.

Although Plaintiffs challenge the Policy on its face and as applied, they do not object to all provisions of the Policy.  Instead, they challenge subsections §2(a), § 5(d)-(f) and § 7, which provide as follows:

> . . .
>
> 2.      Nothing in this directive is intended to punish any employee, to deprive them of their constitutional rights or freedoms, or interfere with activities or exercises prescribed by a physician.
>
> a.      Requests for exemption from this policy may be made to the Chief of Police through the employee's chain of command within 14 days of the employee knowing that they [sic] will be on extended sick leave.

---

[2]When citing to the Policy, the Court uses the Bates-stamped numbering.

. . .

     5.    Conduct While on Sick Leave

. . .

     d.    Members who notify the Department of their inability to report to work due to illness or injury shall remain at their residence or location where they have reported themselves to be recovering during the sick leave period. The employee will be permitted to engage in the following activities: . . .

     (1)    To obtain medical attention or treatment at their physician's office, hospital or clinic . . . .

     (2)    To purchase medications prescribed by their physician.

     (3)    To purchase groceries for meals at their residence or place of confinement.

     (4)    To attend church.

     (5)    To vote.

     (6)    To attend the funeral of any relative or close friend.

     (7)    To engage in any limited activity specifically prescribed by an attending physician.  (ie. [sic] Physical therapy)[.]

     e.    In any event, when employees intend to be away from their residence or recovery location, they shall notify their Division Commander or her/her designee . . . .

     (1)    The location they are going to;

(2)     A telephone number at the location where they can be contacted, if appropriate;

(3)     The reason for their going to that location;

(4)     The anticipated length of absence from their residence or location of recovery;

(5)     The members shall notify the Division Commander of their return to their residence or recovery location.

f.     A member shall not take an extended or out-of-town trip while on paid leave without prior knowledge and permission of the Chief of Police.  Requests for out of town travel will be in writing, addressed to the Division Commander.   The Division Commander shall notify the Chief of Police of any such request . . . .

. . .

7.     Residence Checks

a.     The purpose of this regulation is to set forth the department's policy regarding telephone contact and residence checks of members on any sick leave . . .

b.     The Department will establish telephone or personal contact with a member who has reported him/herself ill or injured and incapable of reporting for duty.  The purpose of the interaction is to determine if the member is receiving adequate medical attention and to ensure general compliance with department regulations.

c.     The Department will periodically call and/or visit those members on extended leave due to serious illness or injury to assess their continued w[e]ll being by inquiring about their medical status, emotional health and offering any appropriate support and services available through departmental programs . . . .

d.     Unless specified otherwise by a Division Commander or higher authority, the following guidelines govern residence calls and checks concerning any sick leave up to seven (7) consecutive days. . . .

(1)     A supervisor will, sometime during the period of time the

5

> member has reported him/herself unable to work due to illness or injury, either contact the member via telephone at the number provided by the member or visit the location where the member has reported him/herself to be recovering . . .
>
> (2)    [T]he frequency of calls/visits will depend to a large extent on the severity of the reported illness or injury, whether the department is in possession of sufficient medical documentation that attests to the individual's condition and receipt of adequate medical attention, and the member's history with respect to use of sick leave.
>
> (3)    Telephone calls or visits by a supervisor will be documented by the supervisor . . . .
>
> (4)    Should it be suspected or determined that a member is not in compliance with regulations governing conduct permitted while on sick leave, etc., the supervisor making the check shall take appropriate action as dictated by the situation and required by the policy . . . .
>
> e.    The Division Commander will determine the extent of residence and/or telephone checks during and [sic] extended leave of absence that is in excess of seven (7) consecutive days . . . .

*Id.* at pp. 00719, 00721.   According to Defendants, the Policy was designed to ensure that police officers do not abuse sick leave or malinger while on sick leave, to reduce overtime (of the police officers having to cover for those on sick leave), and to return injured or ill officers to duty as quickly as possible. Before and during its implementation, the MPD made the Policy available to officers on MPD computers, which are accessible to all police officers.

    During their employment with the City, Dupree, Coleman, and Smith each took sick leave under the policy applicable to them.

    Dupree began his career with MPD in 1991 as a reserve officer.  He was hired by the City as a full-time active officer in 1995 and worked in several divisions, including road patrol.  On February 4, 2013, Dupree suffered a back injury while on the job.  As a result of this injury, Dupree could not

perform the normal duties of his position, such as running, making arrests, or other physically demanding tasks.  Dupree filed a workers' compensation claim, and he was placed on light duty.  On March 11, 2014, Chief Holmes placed Dupree on sick leave under the Policy and applied its restrictions and reporting requirements.  Dupree remained on sick leave for one (1) year and three months, until his retirement on June 1, 2015, because of his back injury.  At the time of the filing of the parties' motions, Dupree had an on-going workers' compensation claim.

While under these restrictions, Dupree received a write up for having lunch at Piccadilly restaurant with his wife after a medical appointment.  Additionally, he was unable to have dinner after church with family members, to attend his grandchildren's extracurricular school and sports activities and birthday parties, to visit relatives out of state, and to celebrate birthdays and anniversaries with his wife.  While he sought a waiver once and was denied in part, Dupree never sought any other waivers.  He admittedly ignored the restrictions on other occasions, attending his grandchildren's graduation and filling his wife's vehicle up with gas.

Coleman began his career with MPD as a police officer in the Road Patrol Division in February 2009.  At the time of his injury, he was working twelve-hour shifts from 6:00 a.m. to 6:00 p.m.  In November 2013, while on duty, Coleman was playing an intramural basketball game against the Monroe Fire Department and injured his groin.  Coleman filed a workers' compensation claim and was placed on sick leave.  In March 2014, Chief Holmes began applying the Policy restrictions and reporting requirements to Coleman.  Coleman remained on sick leave until September 15, 2014. He remained under the Policy until October or November 2014.[3]

---

[3]Coleman claims he remained under the Policy until November 2014; Defendants claim that he remained under the Policy until October.

While under the Policy restrictions, although released to light duty, Coleman was not allowed to return to work because MPD had no light duty positions available.  He was unable to attend birthday and anniversary celebrations, to take his children to the movies, and to participate in family summer activities.  He was written up after Defendants learned that he had traveled to Baton Rouge without permission to interview for a job.  Finally, Coleman was not allowed to return to work for one to two months after his physician released him, but remained on administrative leave with pay.

Smith began his career with MPD as a police officer on March 16, 1992. Prior to his injury, Smith was promoted to Corporal.  He was injured on the job on January 11, 2011, but continued working. He was promoted to Sergeant in 2012.  However, in September 2013, Chief Holmes placed Smith on light duty.  On October 23, 2013, Smith took workers' compensation leave.  At that time, Chief Holmes placed him on sick leave to run concurrently with his workers' compensation leave. Chief Holmes did not begin applying the Policy's restrictions and reporting requirements to Smith until March 11, 2014.  After he exhausted his statutory sick leave at full pay, Smith continued to receive workers' compensation pay until October 2015 when he returned to duty as a Sergeant in the Road Patrol Division.  Smith admits that he was retained after the time the City had the right to terminate his employment.  He remained under the Policy's restrictions and reporting requirements until he returned to duty.

While under the Policy restrictions, Smith, who is single, asserts that he could not date. Additionally, he was denied permission to visit the homes of his immediate family who live in the area, to work out at a local gym, and to travel to Tennessee to visit his mother and step-father, who was ill.  However, Smith ignored the restrictions, taking a vacation to Mexico with a female companion.

8

On February 17, 2015, Plaintiffs filed their Complaint in this Court.  After discovery was complete, Defendants filed their Motion for Summary Judgment [Doc. No. 9], and Plaintiffs filed their Motion for Partial Summary Judgment [Doc. No. 11].  The motions have been fully briefed, and the Court is now prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review for Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.

*Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

**B.     Section 1983 Claims**

"Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir.2003). "To state a claim under 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  A "person" under § 1983 may include a government entity if liability is premised on a policy or custom that caused the alleged constitutional deprivations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Board of Cnty. Comm'nrs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 n. 10 (5th Cir. 2000).  An official capacity suit against an official is the equivalent of a suit against the entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985); *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991); *McMillian v. Monroe Cnty., Ala.,* 520 U.S. 781, 784-85, (1997)[4]; *Burge v. St. Tammany Parish,* 187 F.3d 452, 466 (5th Cir. 1999).

---

[4]As the Supreme Court explained,

a suit against a governmental officer "in his official capacity" is the same as a suit "'against [the] entity of which [the] officer is an agent,'"  *Kentucky. . .* , 473 U.S. . . . [at] 165 . . . (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n. 55 . . .(1978) and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents,"  *Brandon . . . ,* 469

In this case, Plaintiffs contend that Defendants, acting under color of state law, implemented and applied the Policy, which is unconstitutional both on its face and as applied to the three individual Plaintiffs.  They assert that Defendants' actions violated their rights under the First, Fourth, Ninth, and Fourteenth Amendments.

### 1.       Freedom of Association and Right to Travel

First, Plaintiffs argue that the Policy on its face and as applied is unconstitutional because it violates their rights of freedom of association and right to travel.

There are two types of "constitutionally protected 'freedom of association'" claims: intimate or intrinsic association and expressive association.  *Roberts v. United States Jaycees*, 468 U.S. 609, 617 (1984); *see also Boy Scouts of America v. Dale*, 530 U.S. 640, 646-47 (2000).   With regard to intrinsic association, the "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme."  *Roberts*, 468 U.S. at 617-18.  This type of freedom of association claim is protected as a liberty interest under the Due Process Clause of the Fourteenth Amendment.  *See Bd. of Directors of Rotary Intern. v. Rotary Club of Duarte*, 481 U.S. 537, 546 (1987); *Roberts*, 468 U.S. at 618.  "In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment–speech, assembly, petition for the redress of grievances, and the exercise of religion.  The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties."  *Roberts*, 468 U.S. at 618.  In some cases, the two types of

---

U.S. . . [at] 471 . . . .

*McMillian,* 520 U.S. at 785 n. 2.

claims may also overlap.

Plaintiffs allege that the Policy constituted an undue restriction on their ability to enter into and maintain intimate relationships with family and friends outside their homes, thus asserting a claim that they were denied intrinsic or intimate association.

Plaintiffs also allege that they were denied the right to travel out of state to visit family and to take trips under the Policy.  The right to travel is "an aspect of liberty that is protected by the Due Process Clause" of the Fourteenth Amendment.  *Jones v. Helms*, 452 U.S. 412, 418-19 (1981).  Citizens are protected from undue state interference or restrictions on their exercise of the right to "leave one State and enter another."  *Id.* at 419; *see also Saenz v. Roe*, 526 U.S. 489 (1999).[5]  Thus, the right to travel applies only to the ability of citizens to freely move from one state to another, not intrastate travel.

### a.      First Amendment

Plaintiffs cited the First Amendment in their Complaint as a basis for their claim that they were denied their rights of freedom of association.  However, Plaintiffs have not alleged any facts or offered evidence to support a claim that the Policy on its face or as applied violated their rights of expressive association.  Accordingly, to the extent that Plaintiffs asserted claims under the First

---

[5]The right to engage in interstate travel is one component embraced by Supreme Court case law.  *Saenz*, 526 U.S. at 500.  The second and third components of the right to travel are, respectively, "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the [a] second state" and, "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State."  *Id.*  The second component is protected by the Privileges and Immunities Clauses of Article IV, § 2 of the United States Constitution.  The third component is protected by the "opening words of the Fourteenth amendment . . . [that] 'No State shall make or enforce any law which shall abridge the privileges or immunities of the United States.'" *Id.* at 502-03.  Neither the second nor third components of the right to travel are at issue in this lawsuit.

Amendment, those claims are DISMISSED WITH PREJUDICE.

   **b.**  **Freedom of Association and Right to Travel under the Fourteenth Amendment**

  The Fifth Circuit recently considered a challenge by police officers to the sick leave policy for the Shreveport (Louisiana) Police Department ("SPD") on constitutional, state law, and other grounds.  *See Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015).  In that case, the SPD policy required the officer "generally [to] remain at his or her residence the entire sick leave period" except to "(1) vote; (2) participate in religious activities; (3) obtain medication; (4) undergo medical care, rehabilitative or therapeutic exercise, or other therapeutic activities; and (5) obtain food or meals."  *Id.* at 279-80.  Officers were not required to obtain permission to engage in the excepted activities.

  Among other challenges, the *Taylor* plaintiffs argued that the home confinement provisions of the SPD policy violated their rights of association with others under the Substantive Due Process clause and their rights to travel.  The Fifth Circuit disagreed:

> A "police department, as a paramilitary organization, must be given considerably more latitude in its decisions regarding discipline and personnel management than the ordinary government employer." . . . As a result, "the Police Department's sick leave regulations must be reviewed deferentially.". . .We will reverse on this issue only if "the regulations bear no rational relationship to a legitimate state interest."  73 SPD 301.06's home confinement provisions rationally serve the Department's legitimate interests in safety and morale "by expediting the recovery of sick officers, minimizing the burden on officers who may have to work longer hours while other officers are out sick, and assuring that officers on sick leave are not malingering and that the sick leave policy is not abused." . . . Importantly, the restrictions about which Plaintiffs complain "are not restrictions of their rights at all times, but rather are limitations placed on their activities only when officers represent that they are too ill to report to duty." . . . "It is reasonable, after all, to expect that an employee too ill to work is too ill to be going about other matters outside the home, even beyond the hours of nine to five." . . . Importantly,
>
> > [t]he sick leave regulations in no way limit appellants as to whom

they may associate with in their homes when ill. Neither do the
regulations restrict the frequency or duration of the visits appellants
may have in their homes with family and friends while on sick leave.
The prohibition on outside-the-home visits to family and friends
while on sick leave is entirely reasonable and not unduly restrictive.
Similarly, it is unquestionably rational for the [Department] to limit
[Plaintiffs'] ability to travel when on sick leave.

. . . Plaintiffs also argue that the home restriction provisions are unconstitutional
because they give government officials too much discretion to decide whether and
when an ill or injured officer may leave his or her house. . . .We reject this argument
as well. When a home confinement provision in a sick leave policy contains readily
available and well-defined exceptions, the fact that the policy "leaves certain small
decisions to the employer's discretion"  . . . will not render the policy
unconstitutional. . . . SPD 301.06 contains an enumerated list of non-discretionary
exceptions, so it passes constitutional muster. . . . Thus, we reject Plaintiffs'
constitutional challenges to SPD 301.06's home confinement provisions.

*Taylor*, 798 F.3d at 280-81 (citing *Crain v. Bd. of Police Comm'rs of the Metro. Police Dep't of the*

*City of St. Louis*, 920 F.2d 1402, 1406, 1409 (8th Cir. 1990)[6] (other citations omitted)).

Plaintiffs herein also challenge the home confinement provisions of the Policy.  While there

are some minor differences in the two policies, the Court finds that the same considerations

addressed by the Fifth Circuit with regard to the freedom of association and right to travel claims

apply with equal measure in this case.  As in *Taylor*, Defendants have offered a rational basis for the

Policy: "protecting the morale of the MPD, deterring malingering or abuse of the Policy, encouraging

and promoting the recovery of employees, and reducing the burden on other officers who may have

to fill in for sick officers." [Doc. No. 9-2, pp. 14-15].  The restrictions do not apply to officers at all

times, but only to those officers who are too ill or injured to report to work.  Officers under the Policy

are not restricted from associating with any friends or family in their home, and all three Plaintiffs

---

[6]In *Crain*, the United States Court of Appeals for the Eighth Circuit rejected a challenge
to another similar sick leave policy.

concede that the Policy did not prevent them from inviting friends and family over to visit.  Finally, the Fifth Circuit agreed that it is rational to limit the ability of officers on sick leave from traveling out of state.

Plaintiffs point out that the Fifth Circuit did not consider the "unlimited time period for . . . home confinement" under the instant Policy and "the requirement that all leaves from home be reported." [Doc. No. 11-2, pp. 5-6].  However, the time period for home confinement is not **unlimited**, it is limited by the length of the sick leave taken by the officer.  At most, that is 52 weeks.  Additionally, although the Policy does require persons to report their leaves from home, they are not prevented from leaving their home for any of the enumerated reasons set forth in the Policy.  Further, with regard to the right to travel, the Policy in this case also had an additional safeguard of a waiver process under which officers could make a request to travel out of state.[7]  Under all of these circumstances, the Court finds that Plaintiffs have failed to establish a genuine issue of material fact for trial on their facial challenge that the Policy violates their rights of freedom of association and to travel.

To the extent that Plaintiffs assert a claim that the Policy violates their rights of freedom of association and to travel as applied, they have also failed to raise a genuine issue of material fact for trial.  If the Policy is constitutional, then the general and typical application of its provisions to Plaintiffs do not somehow transform into an "as applied" challenge.  In this case, Plaintiffs contend that the Policy, as applied, prevented them from seeing family and friends outside their home and

---

[7]Defendants point out that Smith traveled to Mexico with a female companion while on leave under the Policy, but without permission, contending that "nothing stopped [him] from traveling exactly where [he] desired, not even the Policy." [Doc. No. 9-2, p. 16].  However, the fact that Smith violated the Policy offers nothing to the legal analysis of whether the Policy is unconstitutional on its face or as it was applied to Plaintiffs.

from traveling out of state, but those are the same assertions they made in their facial challenge. Finally, the fact that Dupree was subjected to a "write up" for having lunch at a restaurant in violation of the Policy also fails to raise a constitutional claim. The enumerated exceptions under the home confinement provisions clearly provide for Dupree's ability to obtain groceries, and nothing prevented his wife from purchasing prepared meals at the grocery store or from a restaurant.

Defendants' Motion for Summary Judgment on Plaintiffs' claims that the Policy, facially and as applied, violated their rights of freedom of association and to travel under the Fourteenth Amendment is GRANTED, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and these claims are DISMISSED WITH PREJUDICE.

### 2.    Equal Protection

Plaintiffs allege constitutional violations of equal protection against Defendants. Plaintiffs argue that their Equal Protection rights have been violated because (1) the Policy which applies to police officers who are injured on the job is more restrictive than sick leave policies applied to other City employees who are injured on the job, and (2) other workers' compensation claimants are not subjected to these or similar restrictions.

The Fourteenth Amendment mandates that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) 'a state actor intentionally discriminated against [him] because of membership in a protected class[,]' . . . or (b) he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citations omitted). Plaintiffs do not allege that they are members of a protected

class and, thus, must meet their burden under the alternative test.

First, as Defendants correctly argue, Plaintiffs cannot establish that they are similarly situated with regard to most other City employees or workers' compensation claimants.   Other than firefighters, police officers are the only City employees who receive the statutorily-created  benefit of 52 weeks of fully paid sick leave each year.   Therefore, to the extent that Plaintiffs attempt to compare themselves to other City employees or workers' compensation claimants, their Equal Protection claims fail.

Second, Defendants have a rational basis for the difference in treatment between police officers and other City employees or workers' compensation claimants, including firefighters.   In *Taylor*, the Fifth Circuit also reviewed the police officer plaintiffs' Equal Protection challenge to the SPD policy on the basis that they were "subject to greater sick leave restrictions than the City's firefighters." *Taylor,* 798 F.3d at 281.  Rejecting the challenge as "meritless," the Fifth Circuit found that the City "has a rational basis for treating police officers differently than firefighters" because "[p]olice officers, unlike firefighters, are tasked with apprehending potentially hostile suspects, and they are authorized to use deadly force if necessary." *Id.* at 281-82.  Therefore, the City has a rational basis  "to take stronger measures to protect the physical and mental health of its police officers than it takes to protect its firefighters." *Id.* at 282.

The Fifth Circuit's analysis applies here as well.  Defendants have a rational basis to treat police officers differently from other City employees and workers' compensation claimants, including firefighters, as set forth in *Taylor*.  Therefore, Plaintiffs have failed to raise a genuine issue of material fact for trial whether the Policy violates their Equal Protection rights. Defendants' Motion for Summary Judgment on Plaintiffs' Equal Protection claims is GRANTED, Plaintiffs' Motion for

Partial Summary Judgment is DENIED, and these claims are DISMISSED WITH PREJUDICE.

### 3.   Search and Seizure

Plaintiffs also challenge the Policy's provisions allowing for "residence checks," contending that these checks constitute an unreasonable search under the Fourth Amendment.  Defendants contend that residence checks do not violate the Fourth Amendment, but, as stated by Chief Holmes, are rationally related to the purposes of checking on an officer's well being, ensuring that the officer is properly logged away from his or her place of recovery, and delivering any items an officer might need.

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." A person may claim "the protection of the Fourth Amendment" if he "has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1998) (citations omitted).  It is axiomatic that a person has a legitimate expectation of privacy in his own home.

However, Plaintiffs' claims are foreclosed by the Fifth Circuit's decision in *Taylor.*  The *Taylor* plaintiffs also argued that the SPD's policy allowing a supervisor or human resources employee to "'visit or contact the member to ascertain if the department can do anything to assist the member and verify information' regarding the officer's health status" was an "'unreasonable search and seizure' in violation of the Fourth Amendment." 798 F.3d at 281.  The Fifth Circuit rejected this claim as "meritless," citing to three federal district court decisions which held that such checks survive constitutional review.  *Id.* at 281, 281 n.16.  (citing *Competello v. LaBruno*, No. Civ.A. 02-664(DRD), 2005 WL 1637907, at *10, *12 (D. N.J. July 12, 2005) ("The department can also call or visit the officer's house to ensure that the officer is abiding by the restrictions. . . . Here, both the

18

monitoring policy and the policy requiring that officers stay at home do further a substantial state interest in ensuring that police officers do not abuse their sick leave privileges.")[8];  *Korenyi v. Dep't of Sanitation of the City of New York*, 699 F.Supp. 388, 396 (E.D.N.Y.1988) ("Unannounced home visits to ensure compliance with the Department's rules and regulations are generally made daily. The employee signs a departmental form as proof that he was in fact at home when visited. Suspected violators or malingerers are subject to multiple daily visits. If an employee does not appear to be home when a visit occurs, a Department investigator will telephone. If no response is obtained, a message is left on the employee's door instructing him to call the Department and explain his absence. . . . Plaintiff's facial challenge to the Department sick-leave rules and regulations is dismissed in its entirety.");  *Phila. Lodge No. 5, Fraternal Order of Police v. City of Phila.*, 599 F.Supp. 254, 259 (E.D.Pa. 1984), *aff'd mem. sub nom.* 779 F.2d 43 (3d Cir. 1985) ("The Court has determined that the procedure by which the Fire Department visits the home of a firefighter on sick leave is constitutionally acceptable.").

To the extent that Plaintiffs assert a challenge to this Policy as applied, they have also failed to raise a genuine issue of material fact for trial.  Unlike *Taylor*, which was a class action, this action is prosecuted by three individual Plaintiffs, none of whom can recall a single time when Defendants or their representatives entered or searched their homes.  Smith and Dupree admitted that they were never subjected to a single residence check during the entire time they were out on sick leave, despite the lengthy time that they were off work.  Likewise, Coleman does not recall anyone making a

---

[8]The *Competello* Court applied intermediate scrutiny to its review of the sick leave policy at issue to the extent that it allegedly violated the employees' fundamental rights; however, even under this heightened standard, the Court found that a residence check wold pass constitutional review and, thus, would obviously pass rational basis review "should the court of Appeals eventually utilize the rational basis standard."  2005 WL 1637907 at *12.

personal visit to his home during his sick leave.[9]  Therefore, even if some application of the Policy could constitute a constitutional violation of the Fourth Amendment, it was never applied to the individual Plaintiffs in this case.

Defendants' Motion for Summary Judgment on these claims is GRANTED, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and Plaintiffs' claims that the Policy, facially and as applied, constituted an unreasonable search and seizure in violation of the Fourth Amendment are DISMISSED WITH PREJUDICE.

### 4.    Right to Privacy

Plaintiffs also assert claims that their rights to privacy under the Fourteenth Amendment were violated by the reporting requirements under the Policy.  Under § 5(e), if an employee is away from his residence or recovery location, he has to "notify [his] Division Commander or her/her designee" where he is going, a contact telephone number, the reason for being away from his residence, "[t]he anticipated length of absence," and when he returns to his residence or recovery location. [Doc. No. 9, Exh. 6, § 5(e)].  Plaintiffs argue that these reporting requirements force them to disclose personal information and, specifically, medical information over the police radio.

Defendants move for summary judgment, arguing that the reporting requirements do not require Plaintiffs to disclose anything more than the name or address of the health care professional.

With regard to medical information, there are two types of privacy interests: (1) the "individual interest in avoiding disclosure of personal matters" and (2) "the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *see*

---

[9]While Plaintiffs did recall receiving telephone calls during their time on leave, telephone calls do not constitute a search and seizure of their home and were, at any rate, rationally related to the reasons for the residence checks under the Policy.

*also O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) (The right to privacy "takes two somewhat different forms: the right to personal autonomy . . . and the right to confidentiality." ) (citations omitted).  Plaintiffs do not allege that the Policy affected their decisionmaking, but only that the Policy forced them to disclose personal medical information, a claim that emanates from the liberty aspect of the Fourteenth Amendment.

The Fifth Circuit applies a "balancing test" to the "confidentiality strand of privacy" in which it weighs the "privacy interests" against the "governmental interests as a matter of law." *Woodland v. City of Houston*, 940 F.2d 134, 138 (5th Cir. 1991) (citing *Plante v. Gonzalez*, 575 F.2d 1119, 1134, 1137-38 (5th Cir. 1978) (other citations omitted)).

First, the Court finds that the Policy could be interpreted to provide only the address of the employee's destination.  Coleman testified that he had to provide only the address of his destination. Under this interpretation, it does not appear that a privacy interest was implicated.

On the other hand, the Policy could also be interpreted to require the name of the treating healthcare professional or the facility where treatment is obtained, which could potentially reveal the type of medical treatment the employee is seeking.  Dupree and Smith both testified that they had to provide the name of the doctor with whom they had appointments.  Even assuming, however, that the Policy requires this type of disclosure **and** that the name of a healthcare provider constitutes private medical information subject to protection, [10] the Policy survives challenge.

---

[10]Given the Court's analysis, it need not reach a decision as to whether the name of a healthcare professional alone, without more, is within the "zone of privacy" protected under the Fourteenth Amendment.  *See Whalen*, 429 U.S. at 598 (citations and internal quotation marks omitted).  Notably, the holding in *Whalen* was that New York State's collection of certain patient information for persons who obtained doctor's prescriptions for certain drugs for which there was a lawful and unlawful market did "not establish an invasion of any right or liberty protected by the Fourteenth Amendment." *Id.* at 606.

Under the balancing test applied by the Fifth Circuit, Plaintiffs' minimal privacy interests do not outweigh Defendants' legitimate interests in enforcement of the Policy.  At worst, Plaintiffs were required to disclose the name and/or address of their treating healthcare providers when they left their residence.  They were never required to reveal information from their medical records or any specific diagnoses.  On the other hand, Defendants have a legitimate interest in enforcement of the Policy provisions, as supported by the stated reasons for the Policy discussed above.  Therefore, on balance, the Court finds, as a matter of law, that the Policy's reporting requirements do not constitute an invasion of Plaintiffs' privacy rights under the Fourteenth Amendment.

Further, to the extent that Plaintiffs assert a claim that the Policy violates their rights of privacy as applied, they have failed to raise any additional facts to support such a claim.

Defendants' Motion for Summary Judgment on Plaintiffs' claims that the Policy's reporting requirements constitute an invasion of privacy under the Fourteenth Amendment, on their face and as applied, is GRANTED, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

### 5.    Punishment without Due Process of Law

Plaintiffs next argue that the Policy allows Chief Holmes to act arbitrarily to punish employees, thereby violating their rights to procedural and substantive due process under the Fifth and Fourteenth Amendments.

### a.    Fifth Amendment

Due process rights are created by the Fifth and Fourteenth Amendments to the United States

Constitution.[11]  However, it is well established that the Due Process Clause of the Fifth Amendment prohibits the **United States** from depriving any person of property without due process of law, and the Due Process Clause of the Fourteenth Amendment prohibits the **States** from depriving any person of property without due process of law. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). As the Fifth Amendment applies only to due process violations by a federal actor, Plaintiffs have no claim against Defendants under that Amendment.  Plaintiffs' claims under the Fifth Amendment are DISMISSED WITH PREJUDICE.

### b.    Facial Challenge under the Fourteenth Amendment

According to Plaintiffs, the Policy violates their due process rights because it allows Chief Holmes to act arbitrarily in deciding who is placed under the restrictions of the Policy and when exceptions are allowed.

With regard to the exceptions, the Fifth Circuit addressed a similar argument in *Taylor*.  The plaintiffs in that case argued that the home restriction provisions in the SPD policy were unconstitutional because they gave officials too much discretion "to decide whether and when an ill or injured officer may leave his or her house."  798 F.3d at 280.  The Fifth Circuit rejected their argument finding that a "home confinement provision in a sick leave policy [that] contains readily available and well-defined exceptions" will not be rendered unconstitutional by "the fact that the policy 'leaves certain small decisions to the employer's discretion.'" *Id.* at 281 (quoting *Monahan v. City of New York Dep't of Corr.*, 10 F.Supp.2d 420, 425 (S.D.N.Y. 1998)).  As the SPD policy

---

[11]The Fifth Amendment's Double Jeopardy Clause, privilege against self-incrimination, and Just Compensation Clause have been incorporated into the Fourteenth Amendment and are applicable to the states.  *See McDonald v. City of Chicago,* Ill., 561 U.S. 742, 765 n.12 (2010). However, Plaintiffs do not assert claims implicating these provisions.

contains "an enumerated list of non-discretionary exceptions," the Fifth Circuit found that it passed "constitutional muster." *Id.*

In this case, the Policy also contains enumerated and well-defined exceptions. To the extent that Plaintiffs challenge the Policy on the basis that Chief Holmes may exercise discretion in waivers of the restrictions, the Court finds that, under *Taylor's* reasoning, it passes constitutional muster.

Plaintiffs also contend that the Policy violates their Substantive Due Process rights because, before March 2014, Chief Holmes exercised discretion to decide when an officer is placed under the restrictions of the Policy. The Court has already found that the Policy's provisions are rationally related to the legitimate interests of protecting the morale of the MPD, deterring malingering or abuse of the Policy, encouraging and promoting the recovery of employees, and reducing the burden on other officers who may have to fill in for sick officers. Given the Fifth Circuit's caution that a police department must be given "'more latitude in its decisions regarding discipline and personnel regulations,'" *Taylor*, 798 F.3d at 280 (citing *Crain*, 920 F.2d at 1409) (other citations omitted), the Court finds that Plaintiffs cannot assert a Substantive Due Process claim based on Chief Holmes' past exercise of discretion in determining when an officer must comply with the Policy's provisions. If the Policy itself is constitutional, and the Court has determined that it is, then Chief Holmes' valid application of the Policy to any officer on sick leave is also constitutional. As the head of the MPD, he has the knowledge to evaluate whether a delay in requiring an employee to comply with the Policy's provisions would undermine its goals.[12] Further, since March 2014 (when both Dupree and

---

[12] Plaintiffs have not alleged that Chief Holmes exercises his discretion in a way that violates Equal Protection or other constitutionally protected rights. For example, Plaintiffs do not allege that Chief Holmes applied the policy to officers of only one race or of only one gender.

Coleman were required to comply with the Policy), it is undisputed that Chief Holmes has applied the Policy to all officers on sick leave.  The Court finds that Plaintiffs have not made a facial challenge which would support a claimed violation of substantive due process based on Chief Holmes' past exercise of discretion to delay an officer's required compliance with the Policy.[13] Defendants' Motion for Summary Judgment on Plaintiffs' claims that the Policy is facially unconstitutional because it allows Chief Holmes to exercise discretion is GRANTED, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

### c.    As Applied Challenge under the Fourteenth Amendment

Plaintiffs also contend that their substantive and procedural due process rights were violated because Chief Holmes required them to abide by the Policy restrictions longer than was necessary. Dupree and Smith contend that their rights were violated because Chief Holmes required them to abide by the Policy after their 52 weeks of leave was exhausted.  Coleman contends that his rights were violated because he was required to abide by the Policy when he was available for light duty and also was required to remain under the Policy for one to two months after he obtained a full release from his physician.

With regard to their Substantive Due Process Claim, the Court finds that Chief Holmes'

---

[13]Plaintiffs did not present evidence that Chief Holmes ever exempted an officer on a lengthy sick leave from the Policy.  Instead, as in Plaintiffs' case, he sometimes delayed application of the Policy restrictions to an officer.  Since March 2014, Chief Holmes no longer exercises this discretion, but applies the Policy restrictions to every officer on sick leave. Therefore, even if Plaintiffs could state a claim that Chief Holmes' prior practice constituted a substantive due process violation, at best they could obtain only a declaratory judgment. There is no current practice to enjoin, and it is unclear what damage they suffered from the delay in the application of the Policy restrictions–the same restrictions about which they complain.

application of the Policy to Dupree and Smith after they exhausted their statutory right to 52 weeks

of paid sick leave is reasonable and rationally related to the stated purposes of the Policy.  Once an

officer has exhausted his 52 weeks of leave, Defendants are permitted to terminate his employment,

even if he was injured on the job.  *See Bracey v. Alexandria Mun. Fire & Police Civil Serv. Bd.*, 15-

250, 2015 WL 5837664, at *5-6 (La. App. 3d Cir. 10/7/15).  Instead of taking this action, Chief

Holmes opted to allow the officers to maintain their employment, but to continue complying with

the Policy's provisions.  There can be no constitutional violation based on an action that conferred

a benefit on these two Plaintiffs that is more favorable than the option allowed by law.  Defendants'

Motion for Summary Judgment on Dupree's and Smith's claims that the Policy, as applied,

constituted a punishment in violation of their Substantive Due Process rights, is GRANTED,

Plaintiffs' Motion for Partial Summary Judgment is DENIED, and Dupree's and Smith's claims are

DISMISSED WITH PREJUDICE.

Coleman, however, protests that he was subjected to a Substantive Due Process violation by

Defendants' (1) failure to place him in a light duty position and (2) later refusal to return him to

active duty as soon as he received a release from his physician.  With regard to the light duty

position, Defendants presented evidence that no such position existed. [Doc. No. 7-17, Holmes

Depo., p. 25, lines 13-23].  With regard to the return to active duty, Defendants point out that

Coleman has provided no evidence or citation to support his claim that he was denied a return to

work for two months.[14]  Regardless, Defendants point out, and the Court agrees, that "it is reasonable

---

[14]In his deposition, Coleman agreed in questioning that he had been released by his physician on September 15, 2014 and was placed on administrative leave with pay "without restrictions" until he returned to work on October 20, 2014. [Doc. No. 7-13, Coleman Depo., p. 103, lines 4-21].  Therefore, it appears that Coleman has attempted to contradict his sworn deposition admission that he returned to work in October, not November.  It is further unclear

to expect there to be a delay between an officer being released to full duty by his physician and returning to employment considering the procedural requirements upon returning from extended sick leave." [Doc. No. 14, p. 24].  Finally, Coleman has failed to articulate the right that was violated when he continued to receive full salary and benefits and to accrue seniority for the additional time between his release to work and his actual return to active duty.  Under these facts, Defendants' Motion for Summary Judgment on Coleman's claim that the Policy, as applied, constituted punishment in violation of his Substantive Due Process rights is GRANTED, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and this claim is DISMISSED WITH PREJUDICE.

With regard to their procedural Due Process claim, Plaintiffs must show that Defendants (1) deprived them of a constitutionally protected interest in life, liberty, or property (2) without adequate procedural protections. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Given the Court's conclusions, it is unclear what deprivation could have occurred based on Defendants' actions.  Further, if, as Plaintiffs now contend, they believed that they were subjected to "punishment" or discipline by application of the Policy to them under the facts alleged, they had an available procedure.  Any officer who believes that he has been improperly disciplined may file an appeal to the Police and Fire Civil Service Board, pursuant to LA. REV. STAT. 33:2501.[15] Plaintiffs

---

whether he had no physical restrictions at this time, or was excepted from the Policy restrictions while on administrative leave with pay.  Regardless, the Court finds that he has failed to raise a genuine issue of material fact for trial that he suffered a constitutional injury under these circumstances.

[15]     A. Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after

failed to take advantage of the procedure available and cannot claim that they were disciplined or punished without due process.  The Court finds that Defendants' Motion for Summary Judgment on Plaintiffs' claims that the Policy, as applied, constituted punishment without procedural due process is GRANTED, Plaintiffs' Motion for Partial Summary Judgment is DENIED, and these claims are DISMISSED WITH PREJUDICE.

### 6.    Qualified Immunity

Plaintiffs named Chief Holmes as a Defendant in his  individual and official capacity.   To the extent that they assert claims against Chief Holmes in his individual capacity, they "must show that (1) the defendant violated a federal statutory or constitutional right; and (2) the right in question was 'clearly established' at the time of the violation." *Taylor* 798 F.3d at 289 (quoting  *Tolan v. Cotton*, -- U.S. --, 134 S.Ct. 1861, 1865-66, 188 L. Ed.2d 895 (2014) (citations omitted)).  The Court, as in *Taylor*, has found that the Policy does not violate Plaintiffs' rights, and Chief Holmes, as an individual Defendant "cannot be liable for implementing [or interpreting] it." *Id.*  Accordingly, Defendants' Motion for Summary Judgment on Chief Holmes' qualified immunity defense is GRANTED, and Plaintiffs' claims against him in his individual capacity are DISMISSED WITH PREJUDICE.

### 7.    Claims under State Law

Plaintiffs also raise a claim under Article VI, § 5 of the Louisiana Constitution.  Cities with a home rule charter, like the City, may only exercise powers not denied by general law or inconsistent with the state constitution.  They argue that "[m]unicipal ordinances or regulations which violate a

---

receipt of the written request.

LA. REV. STAT. § 33:2501

state general law are unconstitutional" and that the Policy "conflicts with state law in several

instances." [Doc. No. 1, ¶ VIII].  Plaintiffs argue that Defendants violated the Louisiana Constitution

because the Policy conflicts with state laws in the following ways:

1)     The [Policy] involved herein violates La. R.S. 33:2214, the statute which grants the one year of paid sick leave, by burdening the exercise of the right so much as to make it a punishment rather than a benefit and by burdening it with requirements not authorized or mentioned by law[;]

2)     The [Policy] violates La. R.S. 23:1221 by denying opportunity to gain restricted employment and collect supplemental earnings benefits;

3)     By denying the benefit of vocational rehabilitation under La. R.S. 23:1226;

4)     By failing to allow for visits to or efforts to secure an attorney for representation;

5)     By failure to provide for appearance[s] at mediations and hearings in workers' compensation litigation;

6)     By interfering with the jurisdiction of the workers' compensation judge under La. R.S. 23:1310.3(E),[16] which grants the workers['] compensation judge with original jurisdiction over all claims and disputes in workers' compensation cases;

7)     By burdening police workers['] compensation claimants with requirements not authorized or required by the workers' compensation law and specifically La. R.S. 23:1034 and 1034.1; and

8)     By requiring police workers['] compensation claimants to comply with an onerous set of requirements not required of any other workers['] compensation claimants.

[Doc. No. 1, ¶ VIII].  The Court will discuss each of these claims.

_____

[16]Defendants point out that Plaintiffs most likely intended to cite LA. REV. STAT. 1310.3(F), which provides that a workers' compensation judge is "vested with original, exclusive jurisdiction over all claims and disputes arising out of this Chapter."

### a.   La. Rev. Stat. 33:2214

First, Plaintiffs contend that the Policy conflicts with La. Rev. Stat. 33:2214 because it turns the benefits provided thereunder into a punishment.  The Court disagrees.  The Court has found that the Policy is rationally related to legitimate City interests and is constitutional on its face and as applied to Plaintiffs.  Although Plaintiffs argue strenuously that they should have been exempted from the Policy because they were injured on the job and subject to workers' compensation laws, the type of injury they received is of no moment.  Whether Plaintiffs were injured on or off the job, Plaintiffs received exactly what they were entitled to under the statute: full salary for the entire time that they were on sick leave.  As workers' compensation claimants, part of that salary was workers' compensation benefits, but it is undisputed that the City met the requirements of the statute to ensure that Plaintiffs received their full salary.  To this extent, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiffs' claims that the Policy conflicted with La. Rev. Stat. 33:2214 and violated the Louisiana Constitution are DISMISSED WITH PREJUDICE.

### b.   Supplemental Earnings Benefits

Plaintiffs next argue that the Policy violates La. Rev. Stat. 23:1221 "by denying the opportunity to gain restricted employment and collect supplemental earnings benefits." [Doc. No. 1, ¶ 30].  Defendants argue that Plaintiffs have a fundamental misunderstanding of supplemental earnings benefits ("SEBs"), and they were not entitled to recovery of SEBs under the statute.

> "The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Banks, supra* at 556. . . It is only when the

employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee's community or reasonable geographic location. . .

*Poissenot v. St. Bernard Par. Sheriff's Office*, 2009-2793 (La. 1/9/11), 56 So. 3d 170, 174.  In other words, if an employee is able to work, but not earn his regular wage, he can seek SEBs, to be paid by his employer, to bring him up to his regular wage.

In this case, it is undisputed that Plaintiffs were unable to perform their regular duties, but were paid 100% of their salary as provided for under LA. REV. STAT. 33:2214.  Further, to the extent that Plaintiffs contend that the Policy prevented them from working light duty positions, they would have done so at full pay and would not have been entitled to SEBs.  Finally, to the extent that Plaintiffs complain that the Policy prevented them from obtaining part-time employment or wages from outside jobs, LA. REV. STAT. 23:1221 is inapplicable.  Therefore, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiffs' claims that the Policy conflicted with LA. REV. STAT. 23:1221 and violated the Louisiana Constitution are DISMISSED WITH PREJUDICE.

### c.     Vocational Rehabilitation

Plaintiffs next argue that the Policy conflicts with LA. REV. STAT. 23:1226 because Plaintiffs were denied the benefit of vocational rehabilitation.  Defendants argue that there is no evidence that this allegation is true.

Under LA. REV. STAT. 23:1226, an injured employee is entitled to vocational rehabilitation benefits provided by a licensed professional vocational rehabilitation counselor if the employee's injury precludes him from "earning wages equal to wages earned prior to the injury." In this case, Smith and Dupree were both provided vocational rehabilitation services.  Coleman was scheduled

31

for these services, but did not appear for his appointment.  Thus, Plaintiffs have failed to raise a genuine issue of material fact for trial.  Defendants' Motion for Summary Judgment on these claims is GRANTED, and Plaintiffs' claims that the Policy conflicted with LA. REV. STAT. 23:1226 and violated the Louisiana Constitution are DISMISSED WITH PREJUDICE.

### d.    Ability to Meet with an Attorney

Plaintiffs next argue that the Policy denied them the ability to meet with an attorney.  They do not identify any particular statute with which the Policy conflicted.  Regardless, however, Plaintiffs all admitted that they met with attorneys while under the Policy.  To the extent that Plaintiffs argue that the Policy does not contain an exception for meeting with an attorney, the Policy does contain a waiver provision, they were all aware of the waiver provision, and they could have requested a waiver.  They chose not to do so, but ignored the restrictions and met with their attorney instead.  Under these facts, Plaintiffs have failed to raise a genuine issue of material fact for trial. Defendants' Motion for Summary Judgment is GRANTED, and Plaintiffs' claims that the Policy denied them the ability to meet with an attorney and violated the Louisiana Constitution are DISMISSED WITH PREJUDICE.

### e.    Conflict with Workers' Compensation Laws

The remainder of Plaintiffs' state law claims are that the Policy and its application conflicts with various aspects of workers' compensation law by (1) failing to provide for appearances at mediations and hearings in workers' compensation litigation; (2) interfering with the jurisdiction of the workers' compensation judge; (3) burdening police workers' compensation claimants with requirements not authorized or required by the workers' compensation law; and requiring police workers' compensation claimants to comply with an onerous set of requirements not required of any

32

other workers' compensation claimants.

The Court finds that these claims also fail.  Defendants provided an affidavit from Melinda Boyd ("Boyd), the workers' compensation claims examiner who is employed by Louisiana Agricultural Corporation, LLC, and handles claims filed by City employees.  Boyd averred that she has personally handled all of Plaintiffs' claims, that their workers' compensation claims are separate and apart from their sick leave claims, and that their rights under workers' compensation law are not affected by the Policy.  Plaintiffs admit that they were not prevented from attending any workers' compensation hearings or from receiving any benefits to which they were entitled under workers' compensation law.

Additionally, there is no conflict between the Policy and the jurisdiction a workers' compensation judge has over workers' compensation claims.  The Policy addresses sick leave in general over which the workers' compensation judge has no jurisdiction. *Romagosa v. Lafayette City-Parish Consolidated Gov't.*, 2001-1600 (La. App. 3d Cir. 5/29/02), 824 So.2d 448, 453 (" . . . civil service governs an employee's use of sick leave when he is entitled to workers' compensation benefits, and the workers' compensation judge has no jurisdiction over the issue of sick leave.") (citations omitted).

Finally, to the extent that Plaintiffs argue that they were required to comply with more onerous requirements than other workers' compensation claimants, the Court finds no conflict with state law which would violate the Louisiana Constitution.  Plaintiffs faced the same requirements of any other workers' compensation claimant.  The restrictions and requirements of the Policy were rationally related to legitimate City interests while Plaintiffs were on sick leave and receiving a greater benefit than that awarded to other workers' compensation claimants: full pay.  Workers'

33

compensation law does not prevent the City from enacting, implementing, and enforcing the Policy. Accordingly, Defendants' Motion for Summary Judgment on these claims is GRANTED, and Plaintiffs' claims that the Policy violated aspects of workers' compensation law and the Louisiana Constitution are DISMISSED WITH PREJUDICE.

### 8.    Injunctive Relief

Given the Court's analysis and conclusions, Plaintiffs have failed to establish that they are entitled to injunctive relief, and their Motion for Partial Summary Judgment on this requested relief is DENIED.

### 9.    Damages

Defendants raise arguments regarding Plaintiffs' claim for additional wages, asserting that these claims invoke the Fair Labor Standards Act.  However, the Court has dismissed Plaintiffs' claims, and, thus, no analysis of damages is necessary, whether or not the Fair Labor Standards Act is implicated.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [Doc. No. 9] is GRANTED, Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 11] is DENIED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

**MONROE, LOUISIANA,** this 31st day of January, 2017.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**